IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PRAIRIE BAND POTTAWATOMIE NATION; )
SIERRA CLUB; WETLANDS PRESERVATION )
ORGANIZATION; JAYHAWK AUDUBON )
SOCIETY; SAVE THE WAKARUSA WETLANDS, )
INC.; KANSAS UNIVERSITY ENVIRONS; )
ECOJUSTICE, )
                                                 Plaintiffs, )
                                                 )     CIVIL ACTION
v. )
                                                 )     No. 08-2534-KHV
FEDERAL HIGHWAY ADMINISTRATION; )
MICHAEL BOWEN, in his official capacity as )
Division Administrator, Federal Highway )
Administration; KANSAS DEPARTMENT OF )
TRANSPORTATION; and DEBRA L. MILLER, )
in her official capacity as Secretary of )
Kansas Department of Transportation, )
)
                                               Defendants. )
_____)

**MEMORANDUM AND ORDER**

The Prairie Band Pottawatomie Nation, the Sierra Club, the Wetlands Preservation Organization, the Jayhawk Audubon Society, Save the Wakarusa Wetlands, Inc. and KU Environs and EcoJustice bring suit against the Federal Highway Administration ("FHA"), the Kansas Department of Transportation ("KDOT"), Michael Bowen, the FHA Division Administrator, and Debra L. Miller, the Secretary of KDOT. Plaintiffs allege violations of the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 et seq., the Clean Water Act, 33 U.S.C. § 1251et seq., the Transportation Act, 49 U.S.C. § 303 et seq., the National Historic Preservation Act ("NHPA"), 16 U.S.C. § 470f et seq, and the American Indian Religious Freedom Act ("AIRFA"), 42 U.S.C. § 1996 et seq. Plaintiffs sue Bowen and Miller in their official capacities. This matter is before the Court on the joint Motion For Partial

Judgment On The Pleadings Pursuant To Fed. R. Civ. P. 12(c) (Doc. # 15) which the FHA and Bowen filed March 4, 2009 and Defendants' KDOT And Miller Motion For Partial Judgment On The Pleadings Pursuant To Fed. R. Civ. P. 12(c) (Doc. # 18) filed March 24, 2009. For reasons stated below, the Court sustains both motions.

**Legal Standards**

A motion for judgment on the pleadings under Rule 12(c), Fed. R. Civ. P., is governed by the same standards as a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P. See Atl. Richfield Co. v. Farm Credit Bank, 226 F.3d 1138, 1160 (10th Cir. 2000); Mock v. T .G. & Y., 971 F.2d 522, 528 (10th Cir. 1992). Under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences from those facts in favor of plaintiffs. See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006). Rule 12(b)(6) does not require detailed factual allegations, but the complaint must set forth the grounds of plaintiffs' entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (plaintiffs need not precisely state each element, but must plead minimal factual allegations on those material elements that must be proved). A complaint must contain sufficient factual matter to state a claim which is plausible – and not merely conceivable – on its face. Id.; Twombly, 550 U.S. at 555. In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

**Factual Background**

Plaintiffs' complaint alleges as follows:

Since 1964, local residents and officials have planned and discussed a southern bypass project

around the City of Lawrence, Kansas. The bypass was partially built in the 1990s. The current proposed project, known as the South Lawrence Traffic-way ("SLT"), consists of a seven-mile, multi-lane freeway extending from U.S. Highway 59 (Iowa Street) to K-10 in eastern Douglas County.

The United States Department of Interior Bureau of Indian Affairs, under the direction of a Board of Regents, administers the Haskell Indian Nations University in Lawrence. Most of its students and a substantial portion of its faculty are Native Americans. The proposed alignment of the SLT, along 32nd Street, is approximately 500 feet south of the Haskell campus.[1] The proposed alignment adjoins the edge of the Haskell-Baker Wetlands – a natural study area which was originally part of Haskell and is located at the southern portion of the Haskell campus. On October 27, 1993, the Haskell Board of Regents requested that all SLT construction cease until its effect on Haskell could be fully evaluated. The FHA completed an initial environmental impact study ("EIS") in 2000 and decided not to commence construction.

On May 8, 2001, KDOT notified the Army Corps of Engineers ("ACE") that it was again evaluating proposals to build a southern bypass around Lawrence. KDOT asked the ACE to prepare the documentation required to ensure compliance with NEPA for the 32nd Street route. On July 26, 2001, the ACE agreed to review KDOT's Section 404 permit application for a proposed route along 32nd Street.[2] On August 9, 2002, the ACE issued a Draft EIS which evaluated various alternative

---

[1] Plaintiffs also refer to the proposed 32nd Street route as the "32B alternative" route, meaning that the 32nd Street route is an alternative to the original 31st Street route proposed in 1990.

[2] Section 404(b) of the Clean Water Act, 33 U.S.C. § 1344, provides in part that the Secretary of the Army may issue permits for the discharge of dredged or fill materials into the navigable waters of the United States at specified disposal sites.

routes. In December of 2002, the ACE released its Final EIS, selecting the 32nd Street alternative. In December of 2003, the ACE released its record of decision and selected the 32nd Street alignment. In March of 2004, the ACE granted KDOT a Section 404(b) permit for the route. Id. On May 2, 2008, the FHA approved the ACE's Final EIS. The proposed route will bisect the Haskell-Baker Wetlands, which is a place of cultural and historical importance to Haskell students, alumni and Native Americans. Plaintiffs allege that it will directly eliminate at least 55 acres of wetlands, impact approximately 2800 feet of stream channel and adversely impact water quality.

## **Plaintiffs' Claims**

Counts X through XIV allege that the FHA and KDOT violated the Clean Water Act because (1) the Section 404 permit and supporting documentation did not overcome the statutorily presumed existence of non-water-dependent alternatives or consider less damaging practicable alternatives, and do not adequately avoid and minimize the SLT impact on the surrounding aquatic environment, and (2) the ACE did not consider adequate mitigation for SLT impacts or determine that the route will not cause or contribute to violations of state water quality standards. Id. Count XIX alleges that defendants violated the AIRFA because the Final EIS and FHA record of decision unnecessarily interfere with American Indian religious practices. Id. at 39.[3]

## **Analysis**

The FHA, KDOT, Bowen and Miller argue that the Clean Water Act, 33 U.S.C. § 1251, does not vest them with any authority to review or issue permits and that plaintiffs' complaint therefore fails to state a claim against them under Counts X through XIV. They also argue that the AIRFA does not create a private cause of action and that they are entitled to judgment as a matter of law on Count XIX.

---

[3] Defendants' motions do not address Counts I through IX, XV, XVI or XVIII.

Plaintiffs respond that the claims under the Clean Water Act and the AIRFA are actually NEPA claims, and that NEPA makes the FHA, KDOT, Bowen and Miller responsible for permits issued under the Clean Water Act.

## I.     Individual Defendants

To the extent plaintiffs assert claims against Bowen and Miller in their official capacities, such claims constitute claims against the FHA and KDOT. See Johnson v. Bd. of County Commr's for County of Fremont, 85 F.3d 489, 493 (10th Cir. 1996); Kayhill v. Unified Gov. of Wyandotte County, No. 99-2287-KHV, 2000 WL 1146134, at *1 (D. Kan. July 31, 2000). Because the FHA and KDOT are already defendants in the case, it is not necessary for plaintiffs to name the individual defendants. Thus, the Court dismisses all claims against the individual defendants in their official capacities.

## II.    Clean Water Act

Section 404(b) of the Clean Water Act, 33 U.S.C. § 1344, requires that the ACE decline to permit the deposit of fill material in the nation's waters where the deposit will have an unacceptable adverse impact or where a practicable alternative to the proposed deposit "would have less adverse impact on the aquatic ecosystem, so long as that alternative does not have other significant adverse environmental consequences." 40 C.F.R. § 230.10(a) (2000). See Utahns For Better Transp. v. U.S. Dep't of Transp., 180 F. Supp.2d 1286, 1291 (D. Utah 2001). Although the FHA and the ACE may act as joint lead agencies in preparing an EIS, the Clean Water Act requires the ACE to conduct its own investigation to decide, on a reasoned administrative record, whether to issue a landfill permit under Section 404(b). See Sierra Club v. U.S. Army Corps of Eng'rs, 701 F.2d 1011, 1042 (2d Cir. 1983), see also Utahns For Better Transp., 180 F. Supp.2d at 1291. Section 404(b) vests the power to review permit applications in the Secretary of the Army alone, acting through the ACE. See  33 U.S.C. §

1344(d).

The FHA and KDOT argue that the Clean Water Act does not authorize them to act under the Clean Water Act, and seek judgment as a matter of law on plaintiffs' Clean Water Act claims. Plaintiffs respond that by necessity, under 23 C.F.R. § 771.133 and 40 C.F.R. § 1506.5, the FHA and KDOT must comply with the Clean Water Act.[4] Plaintiffs concede, however, that the Clean Water Act does not give the FHA or KDOT specific statutory or regulatory authority.[5] See Plaintiffs' Consolidated Response To Defendants' Motions For Partial Judgment On The Pleadings Pursuant To Federal Rule Of Civil Procedure 12(c) (Doc. #29) filed May 26, 2009 at 4.

While many courts have found that private and public entities are liable for violations of the Clean Water Act, see e.g., Piney Run Pres. Ass'n v. County Comm'rs, 268 F.3d 255, 259 (4th Cir. 2001), Comm. to Save Mokelumne River v. East Bay Mun. Util. Dist., 13 F.3d 305, 310 (9th Cir. 1993), Sierra Club v. Simkins Indus., Inc., 847 F.2d 1109, 1118 (4th Cir. 1988), United States v. Sinclair Oil Co., 767 F. Supp. 200, 204 (D. Mont. 1990), Friends of Sakonnet v. Dutra, 749 F. Supp. 381, 384 (D.R.I. 1990), the Court's research does not disclose any case which has held that any agency except the ACE has authority to review permit applications or issue permits under Section 404(b) of the Clean Water Act. Plaintiffs' Clean Water Act claims against the FHA and KDOT are more accurately

---

[4] Sections 771.133 and 1506.5 do not reference the Clean Water Act. Section 771.133 is entitled "Environmental Impact and Related Procedures," and provides that a final environmental impact statement should document compliance with "requirements of all applicable environmental laws, Executive orders, and other related requirements." Section 1506.5 is entitled "Other Requirements of NEPA" and describes agency responsibility under NEPA when an agency prepares an environmental impact statement.

Plaintiffs do not address how Bowen and Miller are liable under the Clean Water Act.

[5] Plaintiffs respond that they intend to amend their complaint and add the ACE as a defendant. See Doc. #29 at 5.

classified as claims under NEPA because they focus on the adequacy of the Final EIS and defendants' alleged failure to consider alternative routes for the SLT. Count XIV attempts to hold the FHA and KDOT liable because the ACE "failed to independently determine that the 32B route will not cause or contribute to violations of state water quality standards." Plaintiffs have not alleged how this failure can be legally imputed to the FHA or KDOT. Also, plaintiffs cite no relevant authority for the proposition that parties other than the ACE can be liable for the issuance of a Section 404(b) permit. The Court therefore holds that FHA and KDOT are entitled to judgment as a matter of law with regard to Counts X through XIV. **III. American Indian Religious Freedom Act**

According to AIRFA, the policy of the United States is to protect and preserve for American Indians their inherent right of freedom to believe, express and exercise the traditional religions of the American Indian. See United States v. Wilgus, No. 00-4015, 2001 U.S. App. LEXIS 17700, at *26 (10th Cir. 2001) (citing 42 U.S.C. § 1996). AIRFA, however, does not create judicially enforceable individual rights. See id. (citing Lyng v. N.W. Indian Cemetery Prot. Assoc., 485 U.S. 439, 455 (1988). The FHA and KDOT argue that plaintiffs cannot state a valid claim under AIRFA because it does not create a cause of action or impose any fiduciary relationship giving rise to liability. Plaintiffs respond that they only reference AIRFA in the context of NEPA and that the Final EIS is subject to challenge under NEPA.

As noted, AIRFA does not create any enforceable individual right to sue. Notwithstanding plaintiffs' disclaimer, Count XIX purports to assert such an individual claim. The Court therefore holds that FHA and KDOT are entitled to judgment as a matter of law with regard to Count XIX.[6]

---

[6] To the extent that plaintiffs want to address AIRFA in the context of independent NEPA claims, they of course are free to do so.

**IT IS THEREFORE ORDERED** that Defendants' Motion For Partial Judgment On The Pleadings Pursuant To Fed. R. Civ. P. 12(c) (Doc. # 15) filed March 4, 2009 and Defendants' KDOT And Miller Motion For Partial Judgment On The Pleadings Pursuant To Fed. R. Civ. P. 12(c) (Doc. # 18) filed March 24, 2009, be and hereby are **SUSTAINED**.

Dated this 18th day of November, 2008 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge